UNION TRUST COMPANY, Respondent, vs. MATTHEWS, Commissioner of Banks, Appellant.

*May 7—June 3, 1952.*

28

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and *Frank A. Ross, Jr.,* law examiner, and oral argument by *Mr. Ross* and *Mr. Tulane.*

For the respondent there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

MARTIN, J.   Sec. 221.14, Stats., so far as material, provides:

"A bank may purchase, hold, and convey real estate for the following purposes only:

"First. Such as shall be necessary for the convenient transaction of its business, including with its banking offices other apartments to rent as source of income. No bank shall invest in a banking office, including apartments connected therewith, together with furniture and fixtures, or become liable thereon in a sum exceeding fifty per cent of its capital and surplus; provided, that in lieu thereof it may invest, with the approval of the commissioner of banks, not to exceed thirty-five per cent of its capital and surplus in the stocks, bonds, or obligations of a bank-building corporation. . . ."

The first question is whether the proposed plan of recapitalization constitutes a new investment which requires the approval of the commissioner of banks under this section of the statutes. If it does not, the commissioner was without jurisdiction to issue his order.

Appellant's contention that approval of the plan is required under sec. 221.14, Stats., is based, first, upon the argument that an exchange of securities is subject to inspection by the securities department under sec. 189.07 (13) of the statutes. That section seeks to protect investors by authorizing the department to determine whether the new securities are a fair equivalent of those surrendered. Even if the stock to be issued under the proposed plan would be subject to approval by the securities department under sec. 189.07 (13),

we cannot see how that would make it subject to the approval of the commissioner of banks under sec. 221.14.

Secondly, appellant points out that the legislature has subjected stock dividends to income taxation at the time of their sale, and argues that it could, if it desired, tax them at the time of receipt; that under such circumstances the twenty-five hundred shares of new common stock which petitioner would receive under the plan could therefore be taxed as income when received—and this is evidence that petitioner will have received new securities, a new investment that it did not have before. The argument is not convincing.

The fallacy in appellant's arguments arises from his presumption that a new security is a new investment; he uses the terms synonymously. In effect, he assumes the very thing he seeks to prove. Under certain circumstances a new security may indeed represent a new investment, but we do not have such a situation here.

The language of sec. 221.14, Stats., is plain. It simply provides that approval of the commissioner must be obtained when a bank seeks to invest in a bank-building corporation. When petitioner invested its funds in One West Main Corporation in 1939 the investment was approved by the commissioner as required by the statute. Under the recapitalization plan no new cash or other assets will be invested in the building company, and the fact that its investment will thereafter be evidenced by certificates representing two classes of stock instead of one does not alter its character. The change in the capital structure of the building company will neither increase nor diminish petitioner's equity; it owns five sevenths of the stock under the original capitalization, and will own five sevenths under the new plan. Its control of the company will be the same; it has five sevenths of the voting rights now, and will have five sevenths under the new plan. The value of petitioner's assets will not be affected. Because of the appreciation in value of the real estate, peti-

tioner's investment is, of course, now worth considerably more than the original $45,000, but that is true whether the new plan is put into effect or not. While the law would prohibit the use of more than thirty-five per cent of petitioner's assets for investment in stock of the building company, it obviously does not forbid it to own stock worth more than the prescribed limit.

We conclude that the trial court was correct in holding that the proposed recapitalization will not result in a new investment by petitioner within the meaning of sec. 221.14, Stats.

In disapproving the plan, apparently the commissioner feared that if it were put into effect some of the new no-par-value common stock owned by petitioner would be distributed to its stockholders as a dividend, thus cutting down its proportionate ownership and prejudicing the interests of depositors by reducing the assets of the bank. However, such distribution is no part of the plan involved here and the parties concede that no such dividend could be declared and paid without the subsequent approval of the commissioner; hence that issue is not before us.

There are other questions raised on the appeal, but since we hold that the commissioner had no jurisdiction to enter his order, it is unnecessary to consider them.

*By the Court.*—Judgment affirmed.